**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | |
|---|---|
| **SCOTT ALMINIANA**, **REBECCA MCPHEE**, **STACEY PFLUG**, **KATIE SHOOK** and **IRIS TIRADO**, individually and on behalf of all other similarly situated individuals, <br><br>      **Plaintiffs,** <br><br> **v.** <br><br> **LOWE'S HOME CENTERS, LLC,** <br><br>      **Defendant.** | **COLLECTIVE AND CLASS ACTION** <br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs SCOTT ALMINIANA, REBECCA MCPHEE, STACEY PFLUG, KATIE SHOOK and IRIS TIRADO ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant LOWE'S HOME CENTERS, LLC ("Defendant"), and state as follows:

## INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as well as the following state laws (collectively referred to herein as the "State Law Wage Acts"):

   a. The Massachusetts Minimum Fair Wages Act, ALM GL ch. 151, §§ 1, *et. seq.* ("Massachusetts Wage Act");

   b. The New York Minimum Wage Act, NY CLS Labor §§ 65, *et seq.* and New York's Wage Theft Prevention Act (and previously the Unpaid Wages Prohibition Act), NY CLS Labor §§ 191, *et seq.* ("New York Wage Acts");

   c. The Oregon Wage Laws, Or. Rev. Stat. §§ 635.010, *et seq.*, and Or. Admin. R. §§ 839-020-0004, 839-020-0030, 839-020-0040, 839-020-0041, 839-020-0043, 839-020-0050, 839-020-0070 ("Oregon Wage Acts"); and

d. The Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* and Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.* ("Pennsylvania Wage Acts").

2. Defendant is an American retail company specializing in home improvement. Headquartered in Mooresville, North Carolina, Defendant operates a chain of retail stores in the United States and Canada. As of November 2018, Defendant and its related businesses operate 2,015 home improvement and hardware stores in North America.

3. In order to effectively operate its home improvement and hardware stores, Defendant employs certain non-exempt employees, including but not limited to: Associates, Cashiers, Customer Service Associates, Managers, Receivers, Sales Associates and Stockers. In addition to receiving a regular wage, these non-exempt employees are eligible to receive nondiscretionary bonus payments based upon objective measures of store or employee performance or length of service.

4. Defendant requires its non-exempt employees to work a full-time schedule, plus overtime. However, Defendant does not properly compensate its non-exempt employees for all hours worked. Specifically, Defendant mischaracterized certain bonus payments as discretionary and failed to include such bonus payments in its non-exempt employees' regular rates of pay, meaning that Defendant's non-exempt employees were deprived of overtime pay in connection with the mischaracterization of these bonus payments.

5. Similarly, Plaintiffs and non-exempt employees receive periodic bonus payments and other regularly recurring compensation payments that are properly classified by Defendant as nondiscretionary; but the calculations that Defendant employs in connection with determining the regular rate of pay for non-exempt employees do not meet the legal requirements set forth in 29 U.S.C. § 207(e) and the Code of Federal Regulations, thus depriving Plaintiffs and other non-exempt employees of overtime pay.

2

6.     Additionally, Defendant does not include paid "volunteer" time when computing its non-exempt employees' total hours worked in any given workweek, meaning that non-exempt employees are deprived of overtime pay during workweeks where they work paid "volunteer" time and where their total hours worked (including paid "volunteer" time) exceeds 40 hours.

7.     These policies result in Defendant's non-exempt employees not being properly paid for all time worked, specifically, overtime.

8.     The individuals Plaintiffs seek to represent in this action are current and former non-exempt employees who are similarly situated to each other in terms of (a) their receipt of nondiscretionary bonus payments and Defendant's failure to include such payments into the regular rate of pay for purposes of computing overtime pay, and/or (b) Defendant's failure to include paid "volunteer" time when computing total hours worked in any given workweek.

9.     Defendant knew or could have easily determined that the bonus payments discussed herein were discretionary, and, thus, were required to be included in its non-exempt employees' regular rates of pay when computing overtime pay, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for the overtime work that they performed in connection with these bonus payments, but deliberately chose not to.

10.    Additionally, Defendant knew or could have easily determined that its non-exempt employees were not "volunteers" within the meaning of applicable law and that paid "volunteer" time should have been included when computing total hours worked in any given workweek, and Defendant could have properly paid overtime to Plaintiffs and the putative Collective and Class when working as paid "volunteers," but deliberately chose not to.

11.    Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages and liquidated damages, injunctive and

declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

12. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

13. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

14. Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed Classes have a different citizenship than Defendant.

15. Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

16. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

17. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4

18.     The Court has personal jurisdiction over Defendant because Defendant is headquartered in the state of North Carolina, conducts business within the state of North Carolina, employs individuals within the state of North Carolina, and is registered with the North Carolina Secretary of State.

19.     Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in the state of North Carolina and has established minimum contacts sufficient to confer jurisdiction over it; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

**VENUE**

20.     Venue is proper in the Western District of North Carolina because Defendant is headquartered in Iredell County, North Carolina. Therefore, a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in the Western District of North Carolina.

**INTRADISTRICT ASSIGNMENT**

21.     A substantial part of the events or omissions giving rise to the claims alleged herein occurred in Iredell County, North Carolina; therefore, this action is properly assigned to the Statesville Division.

**PARTIES**

22.     Plaintiff SCOTT ALMINIANA ("Plaintiff Alminiana") is an Oregon resident who worked for Defendant as an hourly Loss Prevention and Safety Manager from 2016 until January 2019, and as an hourly Department Supervisor from January 2019 until March 2019, at Wood Village Lowe's, 1000 NE Wood Village Boulevard, Wood Village, Oregon 97060 (Store #1114).

5

Defendant compensated Plaintiff Alminiana through the payment of an hourly wage of approximately $21.40 per hour, plus nondiscretionary incentive compensation tied to objective measures of store or employee performance or length of service. Plaintiff Alminiana signed a consent form to join this collective action lawsuit, attached hereto as **Exhibit A**.

23. Plaintiff REBECCA MCPHEE ("Plaintiff McPhee") is a Massachusetts resident who worked for Defendant as an hourly Support Manager at Hadley Lowe's, 282 Russell Street, Hadley, Massachusetts 01035 (Store #1916) from September 2017 until December 2018. Defendant compensated Plaintiff McPhee through the payment of an hourly wage of approximately $22.23, plus nondiscretionary incentive compensation tied to objective measures of store or employee performance or length of service. Plaintiff McPhee signed a consent form to join this collective action lawsuit, attached hereto as **Exhibit B**. Plaintiff McPhee has satisfied all administrative prerequisites prior to filing this action.

24. Plaintiff STACEY PFLUG ("Plaintiff Pflug") is a New York resident who worked for Defendant as an hourly Service Manager at Stony Brook Lowe's, 2150 Nesconset Highway, Stony Brook, New York 11790 (Store #2233) from May 2017 until May 2018. Defendant compensated Plaintiff Pflug through the payment of an hourly wage of approximately $23.53, plus nondiscretionary incentive compensation tied to objective measures of store or employee performance or length of service. Plaintiff Pflug signed a consent form to join this collective action lawsuit, attached hereto as **Exhibit C**.

25. Plaintiff KATIE SHOOK ("Plaintiff Shook") is a Pennsylvania resident who worked for Defendant as an hourly Front-End Manager and Back-End Manager at Quakertown Lowe's, 1001 South West End Boulevard, Quakertown, Pennsylvania 18951 (Store #1667) from June 2017 until July 2019. Defendant compensated Plaintiff Shook through the payment of an

hourly wage, most recently at the rate of $21.69 per hour, plus nondiscretionary incentive compensation tied to objective measures of store or employee performance or length of service. Plaintiff Shook signed a consent form to join this collective action lawsuit, attached hereto as **Exhibit D**.

26. Plaintiff IRIS TIRADO ("Plaintiff Tirado") is a New York resident who worked for Defendant as an hourly Support Manager at Brooklyn Lowe's, 118 2nd Avenue, Brooklyn, New York 11215 (Store #1674) from January 2015 until July 2018. Defendant compensated Plaintiff Tirado through the payment of an hourly wage, most recently at the rate of $25.35 per hour, plus nondiscretionary incentive compensation tied to objective measures of store or employee performance or length of service. Plaintiff Tirado signed a consent form to join this collective action lawsuit, attached hereto as **Exhibit E**.

27. Defendant is a North Carolina limited liability company (SosId: 0087619) with a Principal Office at 1605 Curtis Bridge Road, Wilkesboro, North Carolina 28697-2231. Defendant's Registered Agent for service of process is Corporation Service Company.

28. According to business news website Bloomberg.com, Defendant "retails home improvement, building materials, and home appliances. The Company markets lumber, garden tools and supplies, home electrical devices, electrical components, ceilings, wall panels, hardwood flooring, fasteners, fireplaces, and humidifiers." *See https://www.bloomberg.com/profile/company/0579589D:US* (last visited on January 17, 2020).

29. Upon information and belief, Defendant has employed thousands of non-exempt employees—including Plaintiffs—within the last three years.

## GENERAL ALLEGATIONS

### A. Defendant Misclassified Certain Bonus Payments as Discretionary and Failed to Include Such Bonus Payments When Calculating its Non-exempt Employees' Regular Rates of Pay

30.     Plaintiffs and the putative Collective and Class are/were employed by Defendant within the last three years.

31.     Throughout their employment with Defendant, Plaintiffs were at all times non-exempt employees. As such, Plaintiffs were eligible for and at times worked overtime.

32.     Plaintiffs and Defendant's non-exempt employees were eligible for and at times received nondiscretionary bonus compensation. Defendant, however, misclassified certain bonus payments as discretionary and failed to incorporate such bonus payments into Plaintiffs' and all other non-exempt employees' regular rates of pay for purposes of computing overtime pay.

33.     The FLSA requires employers to compensate non-exempt employees with overtime pay "at a rate not less than one and one-half times" the employee's regular rate for hours worked in excess of 40 in a week. 29 U.S.C. § 207(a).

34.     Under the FLSA, the "regular rate" at which an employee must be paid is defined very broadly "to include all remuneration for employment paid to, or on behalf of, the employee, [unless specifically excluded]." 29 U.S.C. § 207(e).

35.     29 C.F.R. § 778.211(c) states, in pertinent part,

Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made … must be included in the regular rate of pay.

36.     When paying a non-excludable bonus to an employee, an employer must include the bonus payment in the employee's regular rate of pay for purposes of determining overtime pay.

29 U.S.C. § 207(e). Where a bonus includible in the regular rate is meant to cover only one workweek, "[t]he amount of the bonus is merely added to the other earnings of the employee ... and the total divided by total hours worked." 29 C.F.R. § 778.209(a). However, where the bonus is meant to encompass more than one workweek,

> the employer may disregard the bonus in computing the regular hourly rate until such time as the amount of the bonus can be ascertained. Until that is done he may pay compensation for overtime at one and one-half times the hourly rate paid by the employee, exclusive of the bonus. When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week.

*Id.*

37.    In January 2018, Defendant announced to all U.S. employees in an internal company memo that due to recent tax reform legislation, it would be giving over 260,000 full- and part-time hourly employees based in the U.S. - across all of Defendant's facilities, including stores, customer support centers, contact centers and distribution centers - a one-time bonus of up to $1,000 based on length of service. *See https://www.cnbc.com/2018/01/31/lowes-to-give-some-employees-bonuses-expands-benefits-due-to-tax-reform.html* (last visited on January 17, 2020). On February 1, 2018, Defendant publicly announced the planned bonus payment via a press release. *See https://newsroom.lowes.com/news-releases/lowes-expands-benefits-announces-cash-bonus/* (last visited on January 17, 2020).

38.    The bonus payouts - which were paid on February 16, 2018 to hourly employees working in Defendant's retail stores, distribution centers, and customer and contact support centers - were to be determined on a sliding scale based on a worker's length of service, broken down as follows:

9

- Less than 2 years: Full-time employees = $150; Part-time employees = $75

- 2 to 4 years: Full-time employees = $200; Part-time employees = $100

- 5 to 9 years: Full-time employees = $300; Part-time employees = $150

- 10 to 14 years: Full-time employees = $500; Part-time employees = $250

- 15 to 19 years: Full-time employees = $750; Part-time employees = $375

- 20+ years: Full-time employees = $1,000; Part-time employees = $500

*https://www.cnbc.com/2018/02/01/lowes-bonuses-heres-what-employees-will-receive.html* (last visited on January 17, 2020).

39. Rather than pay overtime to Plaintiffs and all other non-exempt employees in connection with the February 2018 bonus payment, Defendant misclassified the bonus payment as discretionary and excluded these sums from the "regular rate" calculation.

40. 29 C.F.R. § 778.211(b) states, in pertinent part,

> In order for a bonus to qualify for exclusion as a discretionary bonus under section 7(e)(3)(a) the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount. **If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it**. Thus, if an employer announces to his employees in January that he intends to pay them a bonus in June, he has thereby abandoned his discretion regarding the fact of payment by promising a bonus to his employees. Such a bonus would not be excluded from the regular rate under section 7(e)(3)(a).

*Id*. (emphasis supplied).

41. The February 2018 bonus payment should, in fact, have been included in Plaintiffs' and Defendant's other non-exempt employees' regular rates of pay for purposes of computing overtime compensation.

42. First, Defendant abandoned any discretion regarding the fact of the bonus payment

by issuing an internal memo promising the bonus to its employees and publicly announcing the bonus and the formula in which the bonus was to be determined. *See https://www.marketwatch.com/story/lowes-one-time-1000-bonus-is-open-to-full-time-workers-with-20-plus-years-of-service-2018-02-02* (last visited on January 17, 2020) ("Lowe's Corp. has announced its own bonus program following the tax overhaul, offering from $75 dollars to part-time workers with less than two years of service to $1,000 to full-time workers with 20-plus years of service.").

43. The fact that the amount and/or distribution of a bonus payment is variable among employees or that the employees do not have an enforceable "right" to a particular bonus payment is not controlling. Rather, "the crux of the question whether a bonus falls within the § 207(e)(3) exception is **whether it has been promised to the employee**, even if that promise is attended by certain conditions and the employee understands that a bonus might not be paid." *Gonzalez v. McNeil Techs., Inc.*, 1:06CV204, 2007 WL 1097887, at *4 (E.D. Va. Apr. 11, 2007) (emphasis supplied).

44. Here, the February 2018 bonus payment was explicitly promised by Defendant to its employees; thus, the bonus payment must be included in the regular rate. *See* 29 U.S.C. § 778.211 (any bonus paid pursuant to any prior promise must be included in the regular rate); *Brown v. Nipper Auto Parts and Supplies, Inc.*, CIV.A. 7:08CV00521, 2009 WL 1437836, at *7 (W.D. Va. May 21, 2009) ("[A] bonus is no longer discretionary, and is included in the calculation of the regular rate of pay when the employer promises in advance to pay a bonus, even if that promise is attended by certain conditions.") (citations and quotations omitted).

45. Additionally, the evidence confirms that the bonus payment was promised to Defendant's employees as an inducement to achieve certain goals beneficial to Defendant as

employer. As explained by Robert A. Niblock, Defendant's chairman, president and CEO, the bonus announcement "is another example of how we will continue to invest in our employee[s] and customer experience…." *See https://newsroom.lowes.com/news-releases/lowes-expands-benefits-announces-cash-bonus/* (last visited on January 17, 2020). Indeed, the fact that Defendant announced the bonus payment in a press release accompanied by statements from its CEO that the cash bonus was an "invest[ment] in our employees", *see id.*, underscores the fact that it became part of Defendant's employment policy to publicly promise the bonus payment to its employees as a means of "induc[ing] them … to remain with the firm," which the Department of Labor says must be "regarded as part of the regular rate of pay." 29 C.F.R. § 778.211(c).

46. Furthermore, the February 2018 bonus payment functions like a retention or "longevity" bonus because even though the bonus-earning work ended prior to the bonus payment, the employee had to remain employed with Defendant to receive the bonus. Such bonuses must be included in the regular rate of pay. *See* 29 C.F.R. § 778.211(c) (noting that bonuses like longevity bonuses or "bonuses contingent upon the employee's continuing in employment until the payment is to be made" must be included in the regular rate of pay); Opinion Letter Fair Labor Standards Act (FLSA), 1986 WL 383427, at *2 ("[W]here an employee must be on the payroll in order to receive a future bonus payment, the payment would be regarded as remuneration for employment which would be included in the regular rate under the Act.").

47. Critically, the formula governing the distribution of the bonus payment reveals that longevity was the critical component of Defendant's chosen distribution plan. *See https://www.cnbc.com/2018/02/01/lowes-bonuses-heres-what-employees-will-receive.html* (last visited on January 17, 2020) (showing that the distribution of the bonus payment was determined on a sliding scale based on a worker's length of service).

48.    Longevity payments such as these do not fall within the literal terms of any of the statutory exclusions in 29 U.S.C. § 207(e). Hence, Defendant was required to include the bonus payment in the regular rate of pay. *See* 29 C.F.R. § 778.200(c) ("[A]ll remuneration for employment paid to employees which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined."); *Shepard v. City of Waterloo*, 14-CV-2057-LRR, 2015 WL 9165915, at *13 (N.D. Iowa Dec. 16, 2015) ("Longevity pay is includible in the regular rate."); *see also Fitzpatrick v. Cuyahoga County*, 1:17 CV 1235, 2017 WL 5178266, at *4 (N.D. Ohio Nov. 8, 2017) (conditionally certifying a class of all present and former non-exempt employees who at any time during the last three years received longevity payments and worked overtime during any period in which said payment was earned).

49.    Finally, any argument by Defendant that it retained discretion as to the fact of the bonus payment is belied by the fact that the bonus was paid to *each and every full and part-time hourly employee*. *See Sliwinski v. EZ Sweep Corp.*, 8:07-CV-158-T-27MSS, 2008 WL 11385513, at *4-5 (M.D. Fla. July 2, 2008) (holding that defendant's quarterly safety bonus was nondiscretionary and includable in the regular rate where the defendant cited no evidence that it retained discretion as to the fact of payment or that the safety bonus was not paid to any employee).

50.    To be sure, if Defendant had truly retained discretion as to the fact of the bonus payment, at least some of Defendant's over 260,000 full and part-time hourly employees would not have received a bonus payment. *See Chao v. Port City Group,* No. 1:04-cv-609, 2005 WL 3019779, at *3-4 (W.D. Mich. Nov. 10, 2005) (noting that an employer is not free to "explicitly reserve to himself unfettered discretion and then send his employees a mixed message by failing to ever meaningfully exercise that discretion by withholding a bonus"). Rather, pursuant to

13

Defendant's press release and internal memo announcing the bonus payment, as well as the fact that the bonus was paid to each of Defendant's over 260,000 full and part-time hourly employees, the bonus was promised in advance and was nondiscretionary. Under these circumstances, the bonus payment does not qualify for the statutory exclusion.

51. Even when considered in a light most favorable to Defendant, the evidence establishes *at best* that Defendant had discretion whether to pay the bonus to its employees *at one point in time.* Defendant made the decision to pay the bonus to *all* of its more than 260,000 full and part-time hourly employees as part of their wages and communicated that decision to them. In doing so, Defendant lost the requisite discretion to properly classify it as a bonus excluded from the regular rate. *See* 29 C.F.R. § 778.211(b) ("If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it.").

52. Taking into account the federal regulations and case law, as well as the baseline rule that exceptions are to be construed narrowly against the employer, the February 2018 bonus payment was required to be included in the regular rates of pay of Plaintiffs and all other non-exempt employees who received the bonus payment.

53. By improperly treating the February 2018 bonus payment as discretionary and failing to include the bonus payment in its non-exempt employees' regular rates of pay, Defendant deprived its employees of overtime pay for each overtime hour worked during the workweeks covering the bonus period.

54. By way of illustration, on February 16, 2018, Plaintiffs Shook and Tirado received a bonus payment - denoted on their pay stubs as a "Discretionary Bonus" - in an amount equal to $156.00 and 206.00, respectively. **Exhibit F**, Plaintiff Shook's February 16, 2018 pay stub; **Exhibit G**, Plaintiff Tirado's February 16, 2018 pay stub. Pursuant to its uniform policy and

practice of misclassifying the February 2018 bonus payment as discretionary, Defendant failed to include the bonus payment in Plaintiff Shook's and Tirado's regular rate calculation in the weeks covered by the bonus period. *Id*. Consequently, Defendant underpaid Plaintiffs Shook and Tirado for the overtime work that they performed during the workweeks in which they earned the bonus.

55. Plaintiffs Alminiana, McPhee, and Pflug, and the putative Collective and Class, similarly received a February 16, 2018 "Discretionary Bonus" payment that was not included in their regular rates of pay and were thus underpaid for their overtime work in the same manner as Plaintiffs Shook and Tirado.

56. Courts interpret wage laws "liberally to apply to the furthest reaches consistent with congressional direction" because "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. V. Secretary of Labor,* 471 U.S. 290, 296 (1985). Broad coverage and narrow exclusions bolster the specific purpose behind overtime requirements: "compensating the employees for the burden of a long workweek" and avoiding "the evil of … underpay." *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424 (1945); *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)

57. Confirming the broad application and protections of the wage laws and regulations, the Ninth Circuit recently explained that in order to "effectuate the [overtime] statutory purposes … [courts] must look not to the contract nomenclature but to all payments, wages, piece work rates, **bonuses or things of value**…." *Brunozzi v. Cable Commc'ns, Inc.,* 851 F. 3d 990, 995-96 (9th Cir. 2017) (internal citations omitted) (emphasis supplied).

58. Moreover, it has long been recognized that longevity bonuses such as the bonus payment at issue here must be included in the calculation of an employee's regular rate of pay. *See*

29 C.F.R. § 778.211. Nevertheless, Defendant treated the bonus payment as discretionary and failed to apportion the bonus payment back over the workweeks in which the bonus payment was earned, thus depriving Plaintiffs and other non-exempt employees of overtime pay.

59.     Where, as here, a lump sum bonus does not fall within one of the eight statutory exceptions set forth in 29 U.S.C. § 207(e), the Code of Federal Regulations requires employers like Defendant to go back and factor the bonus back into the regular rate of pay already paid to the employee over the prior months. 29 C.F.R. § 778.209.

60.     Under this method, an employer must first allocate the bonus to the applicable period during which it was earned and then recompute overtime as a result of the bonus payment:

> [Once] the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory hours worked during the week.

*Id.*

61.     In other words, in addition to paying the bonus, the employer must make a reconciliation payment to account for the additional overtime owed as a result of the increased regular rate stemming from the bonus. *See id.* As explained further in Section 32c03(b) of the Department of Labor Field Operations Handbook, Modernization Revision 729, published 11/17/16, this apportioning occurs "so that the employee will receive an additional amount of compensation for each week in which he/she worked overtime during the period [over which the bonus may be said to have been earned]."

62.     Again, the federal and state legislatures define "regular rate" very broadly "to include *all remuneration* for employment paid to, or on behalf of, the employee, [unless specifically excluded]." *See* 29 U.S.C. § 207(e) (emphasis supplied). Unless the remuneration falls

within a limited statutory exception, it "must be added into the total compensation received by the employee before his regular hourly rate of pay is determined [for purposes of determining overtime compensation due]." 29 C.F.R. § 778.200(c) ("all remuneration for employment paid to employees which does not fall within one of [] seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined").

63.    "FLSA exemptions [to inclusion in the regular rate] are to be *narrowly* construed against ... *employers*", *Klem v. Cty. of Santa Clara, Cal.*, 208 F.3d 1085, 1089 (9th Cir. 2000) (emphasis supplied), and "the *employer* bears the burden of establishing that a payment is exempt from the regular rate." *Slaaen v. Senior Lifestyle Corp.*, 18-CV-1562-JPS, 2019 WL 1543973, at *3 (E.D. Wis. Apr. 9, 2019) (citation omitted) (emphasis supplied). "The presumption is that monies paid to employees are included in calculating regular rates of pay." *Gonzalez v. McNeil Techs., Inc.*, 2007 WL 1097887, at *2 (citing 29 U.S.C. § 207(e)) (the regular rate of pay "shall be deemed to include *all* remuneration for employment paid to ... the employee") (emphasis supplied).

64.    As a result of Defendant's misclassification of the February 2018 bonus payment as discretionary and its failure to include the bonus payment when determining its non-exempt employees' regular rates of pay for purposes of overtime, Plaintiffs and all other non-exempt employees who worked overtime and received the bonus payment were not adequately paid for all of the overtime they worked.

65.    Defendant was at all times aware of the requirement to include nondiscretionary bonus payments when calculating its non-exempt employees' regular rates of pay for purposes of determining overtime pay and that certain bonuses, such as longevity or retention bonuses and other pre-announced bonuses, are not discretionary under applicable law.

66.    Due to Defendant's conduct as described above, Plaintiffs and all other non-exempt

employees who earned the February 2018 bonus payment and who worked overtime were not properly paid their overtime wages, in violation of the FLSA.

**B.** **Defendant Failed to Include Paid "Volunteer" Time When Computing its Non-Exempt Employees' Total Number of Hours Worked in any Given Workweek**

67.     In 2016, Defendant introduced Give Back Time, "a new program that provides full-time employees with up to eight hours of paid time annually to volunteer with nonprofit organizations. In the program's first year, Lowe's employees contributed more than 60,000 volunteer hours to strengthen their local community." **Exhibit H**, Lowe's Companies, Inc. 2016 Annual Report at p. 3.

68.     Defendant promised to pay (and did pay) Plaintiff Shook and other non-exempt employees their base hourly rates of pay for each hour of Give Back Time that they worked. *See, e.g.*, Plaintiff Shook's August 17, 2018 pay stub at **Exhibit I**, showing that she worked eight hours of Give Back Time and was paid for such time at her regular hourly wage of $21.0635.

69.     Defendant, however, does not include Give Back Time when computing the total number of hours worked in any given workweek, *see id*., depriving Plaintiff Shook and other non-exempt employees of overtime pay during workweeks where they worked Give Back Time and where their total hours worked (including Give Back Time) exceeded 40 hours.

70.     For example, if a non-exempt employee works 35 regular hours plus eight hours of Give Back Time in any given workweek, Defendant pays the employee for 43 hours of work at the employee's regular rate of pay but does not pay the employee any overtime wages. This is because Defendant inexplicably excludes Give Back Time from the total number of hours worked in the workweek.

71.     Essentially, Defendant treats Give Back Time as paid time off (PTO) and excludes such time when computing total hours worked in any given workweek, irrespective of the fact that

there is no authority permitting an employee to exclude paid "volunteer" time from total hours worked.

72.     In fact, the FLSA makes clear that an individual is not a "volunteer" when (s)he renders services in contemplation of compensation. *See* Opinion Letter Fair Labor Standards Act (FLSA), 2018 WL 4562932, at *1. Under those circumstances, the individual is an "employee" as defined under the FLSA and is thus entitled to the FLSA's protections, including overtime pay.

73.     "Congress created an exemption to the FLSA's coverage applicable in the public employment context" when "an individual is a 'volunteer' instead of an 'employee.'" *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011). More specifically, the FLSA excludes from

> [t]he term "employee" ... any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate government agency, if –
>
>> (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
>>
>> (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A).

74.     The FLSA also excludes from the "term 'employee' ... individuals who volunteer their services solely for humanitarian purposes to private non-profit food banks and who receive from the food banks groceries." 29 U.S.C. § 203(e)(5).

75.     Neither of these exemptions – 29 U.S.C. § 203(e)(4)(A) or (e)(5) – remove Plaintiff Shook and other non-exempt employees from the definition of employee because the alleged volunteer arrangement was not to volunteer services for a public agency or to a private non-profit food bank. And, even if Plaintiff Shook and Defendant's other non-exempt employees were "volunteering" at a public agency or a private non-profit food bank, they would not qualify as

Case 5:20-cv-00010-KDB-DSC   Document 1   Filed 01/30/20   Page 19 of 41

volunteers under the facts of this case upon a review of the totality of the circumstances and the objective facts surrounding the services they performed.

76.     "The FLSA does not itself define 'volunteer,' but pursuant to a Department of Labor regulation promulgated under the FLSA, a 'volunteer' is an 'individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, **without promise, expectation or receipt of compensation for services rendered**.'" *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d at 427 (quoting 29 C.F.R. § 553.101(a)) (emphasis supplied); *see also Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522, 527 (5th Cir. 2004) (noting that the regulatory definition of volunteer "should be interpreted in the light of the Supreme Court's definition of volunteer as 'an individual who, **without promise or expectation of compensation**, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit.'") (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 (1985) (emphasis supplied)).

77.     Volunteer status is not lost merely because individuals are "paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service." 29 C.F.R. § 553.106(a). But individuals do not qualify for volunteer status unless they offer their services "freely and without pressure or coercion, direct or implied, from an employer." 29 C.F.R. § 553.101(c).

78.     Plaintiff Shook and Defendant's other non-exempt employees who worked Give Back Time do not meet the definition of a volunteer under 29 C.F.R. § 553.101(a) because they did not perform the services rendered without expectation or receipt of compensation. To the contrary, they fully expected to be compensated at their hourly rates and, in fact, received such compensation. *See Biziko v. Van Horne*, 1:16-CV-0111-BP, 2019 WL 3928575, at *15 (N.D. Tex.

Aug. 20, 2019) (holding that the plaintiff was not a volunteer where she expected to be paid (and was paid) her regular hourly wage for services rendered); *Brown v. New York City Dept. of Educ.*, 755 F.3d 154, 165 (2d Cir. 2014) ("The regulatory definition of a public agency volunteer precludes the 'promise, expectation, or receipt of compensation for services rendered.'") (citation omitted); *Marleau v. Lawmen's and Shooters' Supply, Inc.*, 08-14187-CIV, 2009 WL 10668544, at *4 (S.D. Fla. May 15, 2009) ("A volunteer works without promise or expectation of compensation but rather solely for personal reasons. … In ascertaining bona fide volunteer work activity, the critical fact is the expectation of payment.") (citations omitted).

79.     Under the facts at hand, Give Back Time would not have existed but for the hourly compensation provided to Plaintiff Shook and other non-exempt employees. Labeling them as "volunteers" does not affect the FLSA analysis. *See Mendel v. City of Gibraltar*, 727 F.3d 565, 571 (6th Cir. 2013) ("Notably, the Supreme Court has held that those who 'work in contemplation of compensation' are 'employees' within the meaning of the FLSA, even though they may view themselves as 'volunteers.'") (citation omitted); *Cleveland v. City of Elmendorf, Tex.*, 388 F.3d at 527 ("[T]he law requires more than simply labeling workers as volunteers to qualify for volunteer status under the FLSA.") (citations and quotations omitted); *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d at 430 (holding that "neither the parties' descriptive terms nor the definition of a volunteer under state law controls the determination of whether an individual is appropriately deemed a volunteer under the FLSA").

80.     While the FLSA definitions are not governed by the common law, *see Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947), Plaintiff Shook and Defendant's other non-exempt employees who worked Give Back Time do not qualify as volunteers even under the common law. *See* Restatement of Employment Law: Volunteers Are Not Employees § 102 (Am.

Law Inst. 2019) ("An individual is a volunteer and not an employee if the individual renders uncoerced services to a principal without being offered a material inducement."). Plaintiff Shook and Defendant's other non-exempt employees who worked Give Back Time were certainly offered a material inducement—i.e., their hourly rates of pay—to "volunteer" with nonprofit organizations.

81. Plaintiff Shook and Defendant's other non-exempt employees who worked Give Back Time fully expected to be compensated for such time at their hourly rates of pay and, in fact, received such compensation. *See, e.g.*, Plaintiff Shook's August 17, 2018 pay stub at **Exhibit I**. Therefore, Plaintiff Shook and Defendant's other non-exempt employees who worked Give Back Time were not "volunteers" but were instead employees within the meaning of the FLSA and were thus entitled to the FLSA's protections, including overtime pay.

82. As a result of Defendant's failure to include Give Back Time when calculating total hours worked in any given workweek, Plaintiff Shook and Defendant's other non-exempt employees who worked Give Back Time and whose total hours worked in that workweek (including Give Back Time) exceeded 40 hours, were not adequately paid for all of the overtime they worked.

83. Defendant was at all times aware of the requirement to include all hours worked, including paid "volunteer" time, when computing total hours worked in any given workweek and that all hours worked beyond 40 hours in any given workweek must be paid at a rate not less than one and one-half times the employee's regular hourly rate of pay, including nondiscretionary incentive pay where applicable. *See* 29 U.S.C. § 207(a)(1) and (e).

84. Due to Defendant's conduct as described above, Plaintiff Shook and Defendant's other non-exempt employees who worked Give Back Time and whose total hours worked in that

workweek (including Give Back Time) exceeded 40 hours, were not properly paid their overtime wages, in violation of the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

85.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of the following classes:

> *All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers and who received a bonus payment on February 16, 2018 and worked overtime during at least one workweek preceding the bonus payment;* **and**

> *All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers and who worked Give Back Time during at least one workweek from January 30, 2017 through the date of judgment and worked more than 40 hours (including Give Back Time) during said workweek.*

(the proposed classes are collectively referred to herein as the "FLSA Collective"). Plaintiffs reserve the right to amend these definitions if necessary.

86.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated employees.

87.     Excluded from the FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

88.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid all of the overtime compensation due to them when they worked beyond 40 hours in a workweek.

89.     As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.      Willfully failing to incorporate nondiscretionary incentive pay into its non-exempt employees' regular rates of pay for purposes of computing overtime pay; and

b.      Willfully failing to include Give Back Time when computing its non-exempt employees' total number of hours worked in any given workweek.

90.     Defendant is aware or should have been aware that federal law required it to incorporate nondiscretionary incentive pay into its non-exempt employees' regular rates of pay for purposes of computing overtime pay and that Give Back Time should have been included when computing its non-exempt employees' total number of hours worked in any given workweek.

91.     Defendant's unlawful conduct has been widespread, repeated and consistent.

92.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they received a nondiscretionary bonus payment in February 2018 and worked overtime; (b) Defendant failed to properly calculate their "regular rate of pay" and to pay their overtime accordingly; (c) Defendant failed to include Give Back Time when computing their total number of hours worked in any given workweek and failed to pay overtime for those "volunteer" hours; (d) they were or are subject to the same or similar unlawful practices, policy, or plan; and (e) their claims are based upon the same factual and legal theories.

93.     The employment relationships between Defendant and every proposed FLSA Collective member are the same. The key issues - the amount of uncompensated overtime - do not vary substantially among the proposed FLSA Collective members.

94.     Many similarly situated current and former non-exempt employees have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

95.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

96.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

97.     Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period, will include thousands of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 STATE LAW CLASS ACTION ALLEGATIONS

98.     Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Classes (hereinafter collectively referred to as the "Rule 23 State Law Classes"):

**The Massachusetts Class is defined as follows:**

> *All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers in Massachusetts and who received a bonus payment on February 16, 2018 and worked overtime during at least one workweek preceding the bonus payment.*

**The New York Class is defined as follows:**

> *All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers in New York and who received a bonus payment on February 16, 2018 and worked overtime during at least one workweek preceding the bonus payment.*

**The Oregon Class is defined as follows:**

> *All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers in Oregon and who received a bonus payment on February 16, 2018 and worked overtime during at least one workweek preceding the bonus payment.*

**The Pennsylvania Classes are defined as follows:**

*All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers in Pennsylvania and who received a bonus payment on February 16, 2018 and worked overtime during at least one workweek preceding the bonus payment*; **and**

*All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers in Pennsylvania and who worked Give Back Time during at least one workweek within the applicable statutory period and worked more than 40 hours (including Give Back Time) during said workweek.*

99.     Excluded from the Rule 23 State Law Classes are Defendant's exempt executives and administrative and professional employees, including computer professionals and outside salespersons.

100.     *Numerosity:* The putative Class members from Massachusetts, New York, Oregon and Pennsylvania are so numerous that joinder of all members in the case would be impracticable.

101.     *Commonality/Predominance:* There is a well-defined community of interest among Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

> a.     Whether Defendant misclassified certain bonus payments as discretionary;
>
> b.     Whether Defendant failed to include certain nondiscretionary bonus payments when calculating the "regular rate of pay" of the Rule 23 State Law Class members;
>
> c.     Whether Defendant underpaid the Rule 23 State Law Class members because of its failure to include certain nondiscretionary bonus payments when calculating the "regular rate of pay";
>
> d.     Whether Defendant failed to include Give Back Time when calculating the Rule 23 Pennsylvania Class members' overtime hours;
>
> e.     Whether Defendant underpaid the Rule 23 Pennsylvania Class members because of its failure to include Give Back Time when calculating overtime hours;
>
> f.     Whether Give Back Time was required to be included when calculating the

Rule 23 Pennsylvania Class members' overtime hours;

g. Whether the Rule 23 Pennsylvania Class members were "employees" within the meaning of the Pennsylvania Wage Acts when working Give Back Time;

h. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 State Law Class member the correct amount of overtime compensation for each overtime hour worked; and

i. Whether Defendant should be required to pay the Rule 23 State Law Class members compensatory damages, attorneys' fees, penalties, costs, and interest for violating the State Law Wage Acts.

102.    *Typicality:* Plaintiffs' claims are typical of claims of the Rule 23 State Law Classes they seek to represent in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. In each respective state, Plaintiffs' claims arise from Defendant's similar policies, practices, and course of conduct as all other Class members' claims and Plaintiffs' legal theories are based on the same or similar facts.

103.    *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Rule 23 State Law Classes and have retained national counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 State Law Classes.

104.    *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, *inter alia*, it is economically infeasible for the Rule 23 State Law Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

105.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel

know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

106. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

107. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 State Law Classes and declaratory relief is appropriate in this case with respect to the Rule 23 State Law Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

108. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Classes (hereinafter collectively referred to as the "Rule 23 Nationwide Classes"):

> **All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers and who received a bonus payment on February 16, 2018 and worked overtime during at least one workweek preceding the bonus payment**; **and**

> **All current and former non-exempt employees who worked in Defendant's retail stores, distribution centers, or customer and contact support centers and who worked Give Back Time during at least one workweek within the applicable statutory period and worked more than 40 hours (including Give Back Time) during said workweek**.

109. Excluded from the Rule 23 Nationwide Classes are Defendant's exempt executives and administrative and professional employees, including computer professionals and outside salespersons.

110. *Numerosity:* The putative Rule 23 Nationwide Class members are so numerous that

joiner of all members in the case would be impracticable.

111. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Nationwide Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant misclassified certain bonus payments as discretionary;

b. Whether Defendant failed to include certain nondiscretionary bonus payments when calculating the "regular rate of pay" of the Rule 23 Nationwide Class members;

c. Whether Defendant underpaid the Rule 23 Nationwide Class members because of its failure to include certain nondiscretionary bonus payments when calculating the "regular rate of pay";

d. Whether Defendant failed to include Give Back Time when calculating the Rule 23 Nationwide Class members' overtime hours;

e. Whether Defendant underpaid the Rule 23 Nationwide Class members because of its failure to include Give Back Time when calculating overtime hours;

f. Whether Give Back Time was required to be included when calculating the Rule 23 Nationwide Class members' overtime hours;

g. Whether the Rule 23 Nationwide Class members were "employees" within the meaning of applicable law when working Give Back Time;

h. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nationwide Class member the correct amount of overtime compensation for each overtime hour worked;

i. Whether Defendant was unjustly enriched due to its failure to pay all overtime wages due and owing to the Rule 23 Nationwide Class members;

112. *Typicality:* Plaintiffs' claims are typical of the claims of the Rule 23 Nationwide Classes they seek to represent in that Plaintiffs and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from Defendant's similar policies, practices, and

course of conduct as all other Rule 23 Nationwide Class members' claims and the legal theories are based on the same or similar facts.

113. *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Classes and have retained national counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Classes.

114. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, *inter alia*, it is economically infeasible for the Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

115. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

116. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

117. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Classes as a whole, class certification pursuant to Rule 23(b)(2) is also

appropriate.

<u>**COUNT I**</u>
<u>**(29 U.S.C. § 216(b) Collective Action)**</u>
<u>**VIOLATION OF FLSA, 29 U.S.C. § 201,** *et seq.*</u>
<u>**FAILURE TO PAY OVERTIME WAGES**</u>

118.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

119.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

120.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

121.    Plaintiffs and the FLSA Collective, by virtue of their job duties, activities actually performed, and the manner in which they were paid, are all non-exempt employees.

122.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

123.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

124.    The FLSA provides that no employer shall employ any of his employees for a workweek longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1).

125.    The "regular rate of pay" includes all remuneration for employment paid to the employee and includes, but is not limited to, hourly earnings, salary, piece work earnings, commissions, nondiscretionary bonuses, and the value of meals and lodging. *See* 29 U.S.C. §

207(e).

126.    During the relevant time period, Plaintiffs and the FLSA Collective regularly worked overtime.

127.    During the relevant time period, Defendant failed to include certain nondiscretionary bonus payments when determining the "regular rate of pay" for Plaintiffs and the FLSA Collective, as described in this Complaint.

128.    During the relevant time period, Defendant failed to include all hours worked, namely, Give Back Time, when computing the total hours worked for Plaintiffs and the FLSA Collective in any given workweek.

129.    During the relevant time period, Defendant intentionally and willfully failed to pay the proper amount of overtime wages due to Plaintiffs and the FLSA Collective, as described in this Complaint.

130.    In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, all overtime hours worked should have been paid at the federally mandated rate of one and one-half times each employee's regular hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207(a)(1) and (e).

131.    In workweeks where Plaintiffs and other FLSA Collective members worked Give Back Time, such time should have been included when computing total hours worked in the workweek.

132.    Plaintiffs and other FLSA Collective members working Give Back Time should have been paid at the federally mandated rate of one and one-half times each employee's regular hourly wage for all hours worked in excess of 40 hours in such workweeks.

133.    Defendant's FLSA violations were knowing and willful. Defendant knew or could

have determined that the bonus payments discussed herein were nondiscretionary and were required to be included when calculating Plaintiffs' and the FLSA Collective's regular rates of pay for purposes of determining overtime pay. Moreover, Defendant could have easily accounted for and included Give Back Time when computing total number of hours worked in any given workweek, but deliberately chose not to.

134.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 MASSACHUSETTS CLASS ACTION**
**VIOLATIONS OF THE MASSACHUSETTS MINIMUM FAIR WAGES ACT, ALM GL CH 151, §§ 1, *et seq.* ("MASSACHUSETTS WAGE ACT")**

135.    Plaintiff McPhee re-alleges and incorporates all previous paragraphs herein.

136.    G.L. ch. 151, § 1A requires an employer to pay its nonexempt employees overtime compensation at a rate not less than one and one-half times their regular rate of pay for all hours they work in excess of 40 in any given week. The statute reads in material part, "[N]o employer in the commonwealth shall employ any of his employees in an occupation, as defined in section two, for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed." *Id.*

137.    "In addition, if a person is paid by an employer less than [the] overtime rate of compensation [required by G.L. ch. 151, § 1A], the person may institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for the full amount of the overtime rate of compensation less any amount actually paid to him by the employer. … An employee so aggrieved

who prevails in such an action shall be awarded treble damages, as liquidated damages, for lost overtime compensation and shall also be awarded the costs of the litigation and reasonable attorneys' fees." G.L. ch. 151, § 1B.

138. At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Massachusetts Wage Act, and the Rule 23 Massachusetts Class members are employees entitled to the Massachusetts Wage Act's protections.

139. Defendant violated the Massachusetts Wage Act by failing to properly compensate the Rule 23 Massachusetts Class for their overtime hours as described in this Complaint.

140. Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

141. As a result, the Rule 23 Massachusetts Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Massachusetts Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Massachusetts Wage Act at an amount to be proven at trial.

## COUNT III
## RULE 23 NEW YORK CLASS ACTION
## VIOLATIONS OF THE NEW YORK MINIMUM WAGE LAWS, 12 NYCRR §§ 142-1, *et seq.*, NEW YORK LABOR LAW, NY CLS LABOR § 162 ("NEW YORK WAGE ACTS")

142. Plaintiffs Pflug and Tirado re-allege and incorporate all previous paragraphs herein.

143. Pursuant to authorization by the New York Minimum Wage Act, the New York Department of Labor has promulgated a "Minimum Wage Order for Miscellaneous Industries and Occupations," 12 N.Y.C.R.R. §§ 142, *et seq.*, which requires, *inter alia*, that "An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate..." §§ 142-2.2.

144. NY CLS Labor § 663 allows an employee who has not been paid in accordance

with the New York Minimum Wage Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

145.     New York's Wage Theft Prevention Act (and previously the Unpaid Wages Prohibition Act), NY CLS Labor §§ 191, *et seq.*, provides that employees "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." NY CLS Labor § 191(d).

146.     NY CLS Labor § 198 allows an employee who has not been paid in accordance with New York's Wage Theft Prevention Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

147.     At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the New York Wage Acts, and the Rule 23 New York Class members are employees entitled to the New York Wage Acts' protections. *See* 12 NYCRR §142-2.14.

148.     The New York Wage Acts entitle employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week *See* 12 NYCRR §142-2.2.

149.     Defendant violated the New York Wage Acts by failing to properly compensate the Rule 23 New York Class for their overtime hours as described in this Complaint.

150.     Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

151.     As a result, the Rule 23 New York Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 New York Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the New York Wage

Acts at an amount to be proven at trial.

**COUNT IV**
**RULE 23 OREGON CLASS ACTION**
**VIOLATIONS OF THE OREGON WAGE LAWS, OR. REV. STAT. §§ 653.010,** *et seq.*,
**OR. ADMIN. R. §§ 839-020-0004, 839-020-0030, 839-020-0040, 839-020-0041, 839-020-0043,**
**839-020-0050, 839-020-0070 ("OREGON WAGE ACTS")**

152.    Plaintiff Alminiana re-alleges and incorporates all previous paragraphs herein.

153.    At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Oregon Wage Acts, Or. Rev. Stat. §§ 635.010, *et seq.*, and Or. Admin. R. §§ 839-020-0004, 839-020-0030, 839-020-0040, 839-020-0041, 839-020-0043, 839-020-0050, 839-020-0070, and the Rule 23 Oregon Class are employees entitled to the Oregon Wage Acts' protections. *See* Or. Rev. Stat. § 653.010.

154.    The Oregon Wage Acts entitle employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week *See* Or. Rev. Stat. § 653.261; Or. Admin. R. §§ 839-020-0030, 839-020-0070.

155.    Defendant violated the Oregon Wage Acts by failing to properly compensate the Rule 23 Oregon Class for their overtime hours as described in this Complaint.

156.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

157.    As a result, the Rule 23 Oregon Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Oregon Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Oregon Wage Acts at an amount to be proven at trial.

## COUNT V
## RULE 23 PENNSYLVANIA CLASS ACTION
## VIOLATIONS OF THE PENNSYLVANIA MINIMUM WAGE ACT, 43 P.S. §§ 333.101, *et seq.*, AND PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. §§ 333.101, *et seq.* ("PENNSYLVANIA WAGE ACTS")

158.     Plaintiff Shook re-alleges and incorporates all previous paragraphs herein.

159.     The Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of 40 per week. *See* 43 P.S. § 333.104.

160.     43 P.S. § 333.113 provides that an employee who is not paid in accordance with the Pennsylvania Minimum Wage Act may bring a civil action to recover all unpaid amounts, plus costs and reasonable attorneys' fees.

161.     The Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.* requires that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer." 43 P.S. § 260.3(a).

162.     Under 43 P.S. § 260.9a, an employee aggrieved by an employer's violation of the Pennsylvania Wage Payment and Collection Law may bring a civil action to recover all unpaid amounts, plus liquidated damages, costs and reasonable attorneys' fees. *See also* 43 P.S. § 260.10.

163.     At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Pennsylvania Wage Acts, and the Rule 23 Pennsylvania Class members were employees entitled to the Pennsylvania Wage Act's protections. *See* 43 P.S. § 333.103.

164.     Defendant violated the Pennsylvania Wage Acts by failing to properly compensate the Rule 23 Pennsylvania Classes for their overtime hours as described in this Complaint.

165.     Defendant's uniform policy and practice, as described above, was/is willful,

intentional, unreasonable, arbitrary, and in bad faith.

166.    As a result, the Rule 23 Pennsylvania Classes have and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Pennsylvania Classes are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Pennsylvania Wage Acts at an amount to be proven at trial.

**COUNT VI**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

167.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

168.    At all times relevant to this action, Defendant failed to include certain nondiscretionary bonus compensation when calculating Plaintiffs' and every other Rule 23 Nationwide Class members' "regular rate of pay" for purposes of overtime compensation and failed to include Give Back Time when calculating the total number of hours worked in a workweek.

169.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the proper amount owed to them for their overtime hours worked, Defendant was unjustly enriched.

170.    Plaintiffs and the Rule 23 Nationwide Class members performed overtime work at the request of and without objection by Defendant.

171.    Defendant received and accepted the above-referenced overtime work from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

172.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

173.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Classes performed for Defendant's benefit,

without having compensated Plaintiffs and the Rule 23 Nationwide Classes the full amount of wages due and owing to them.

174. Plaintiffs and the Rule 23 Nationwide Classes suffered detriment due to Defendant's failure to properly compensate them for the overtime work described herein, in that Plaintiff and the Rule 23 Nationwide Classes were deprived of the ability to utilize that time, effort and their resources in a manner that maximized their earnings.

175. As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the putative FLSA Collective, the Rule 23 State Law Classes, and the Rule 23 Nationwide Classes, request judgment as follows:

    a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b.    Certifying this action as a class action (for the Rule 23 Massachusetts Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff McPhee's Massachusetts state law claims (Count II);

    c.    Certifying this action as a class action (for the Rule 23 New York Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Pflug's and Tirado's New York state law claims (Count III);

    d.    Certifying this action as a class action (for the Rule 23 Oregon Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Alminiana's Oregon state law claims (Count IV);

    e.    Certifying this action as a class action (for the Rule 23 Pennsylvania Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Shook's Pennsylvania state law claims (Count V);

    f.    Certifying this action as a class action (for the Rule 23 Nationwide Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count VI);

g.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

h.    Designating Plaintiffs as the representatives of the FLSA collective action classes and undersigned counsel as Class counsel for the same;

i.    Designating Plaintiff McPhee as the representative of the Rule 23 Massachusetts Class and undersigned counsel as Class counsel for the same;

j.    Designating Plaintiffs Pflug and Tirado as the representatives of the Rule 23 New York Class and undersigned counsel as Class counsel for the same;

k.    Designating Plaintiff Alminiana as the representative of the Rule 23 Oregon Class and undersigned counsel as Class counsel for the same;

l.    Designating Plaintiff Shook as the representatives of the Rule 23 Pennsylvania Classes and undersigned counsel as Class counsel for the same;

m.    Designating Plaintiffs as the representatives of the Rule 23 Nationwide Classes and undersigned counsel as Class counsel for the same;

n.    Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

o.    Declaring Defendant's violations of the FLSA were willful;

p.    Declaring Defendant violated the state wage and hour laws/acts of the states of Massachusetts, New York, Oregon and Pennsylvania, as cited herein;

q.    Declaring Defendant's violations of the state wage and hour laws/acts of the states of Massachusetts, New York, Oregon and Pennsylvania, as cited herein, were willful;

r.    Declaring that Defendant was unjustly enriched by failing to pay the proper amount of overtime wages owed to Plaintiffs and the Rule 23 Nationwide Classes;

s.    Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Classes, the Rule 23 State Law Classes, and the Rule 23 Nationwide Classes, the full amount of damages and liquidated damages available by law;

t.    Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

u.      Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

v.      Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: January 30, 2020                          Respectfully submitted

s/ James J. Mills
James J. Mills, NC Bar No. 36529
BURNS, DAY & PRESNELL, P.A.
2626 Glenwood Avenue, Suite 560
Raleigh, North Carolina 27608
Phone: (919) 782-1441
jmills@bdppa.com

Kevin J. Stoops (will *pro hac vice*)
Jason J. Thompson (will *pro hac vice*)
Rod M. Johnston (will *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
jthompson@sommerspc.com
rjohnston@sommerspc.com

*Attorneys for Plaintiffs and the Putative*
*Class/Collective Action Members*