IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00010-KDB-DSC

| | |
|---|---|
| SCOTT ALMINIANA, STACEY PFLUG, REBECCA MCPHEE, KATIE SHOOK, AND IRIS TIRADO, <br><br> Plaintiffs, <br><br> v. <br><br> LOWE'S HOME CENTERS LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss for Lack of Jurisdiction and Compel Arbitration" (Doc. 34) and the parties' briefs and exhibits. The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration. Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss for Lack of Jurisdiction and Compel Arbitration be granted as discussed below.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs Scott Alminiana and Stacey Pflug are former employees of Defendant Lowe's Home Centers LLC, a retail company specializing in home improvements. Doc. 1, at 1-2, 5-6.

Alminiana worked at an Oregon Lowe's store as an hourly loss prevention and safety manager from 2016 until January 2019. Id. at 5. In January 2019, Lowe's offered Alminiana a promotion to department supervisor. Id.; see also Doc. 18-1, at 3. Alminiana accepted the offer by electronically signing an online decision form, where he acknowledged that he had "read the terms and conditions set forth in the Offer Letter." See Doc. 18-1, at 12. Included in the offer letter was an agreement to arbitrate all claims with Lowe's, applicable to "all positions [Alminiana] may hold as an employee of Lowe's." Id. at 11. In accepting the offer, Alminiana agreed that "any controversy between [him] and Lowe's . . . arising out of [his] employment or the termination of [his] employment shall be settled by binding arbitration." Id. at 10. The arbitration provision further specifies that it is "intended to be broad and to cover, to the extent otherwise permitted by law, all such disputes between [Alminiana] and Lowe's including but not limited to those arising out of federal and state statutes and local ordinances, such as . . . the Fair Labor Standards Act [("FLSA")] . . . and any similar federal, state and local laws." Id. The agreement also includes a class and collective action waiver, which makes clear that "there shall be no right or authority for any dispute to be arbitrated as a class action or collective action." Id.

Pflug worked for Lowe's in New York as an hourly service manager from May 2017 to May 2018. Doc. 1, at 6. In accepting a May 2018 position as a sales specialist, Pflug agreed to arbitrate any and all claims that she may have against Lowe's. See Doc. 18-1, at 14-17. Like Alminiana, Pflug specifically acknowledged that she had read the terms and conditions set forth in her offer letter, including the arbitration provision. Id. at 17. The arbitration provision in Pflug's offer letter makes clear that it is "intended to be broad," and that it applies to "any controversy . . . arising out of [her] employment or the termination of [her] employment." Id. at 14–15. Like Alminiana, Pflug expressly agreed to arbitrate "any" claims against Lowe's,

2

Case 5:20-cv-00010-KDB-DSC     Document 41     Filed 06/09/20     Page 2 of 8

including claims under the FLSA and similar state laws. Id. Pflug's arbitration agreement also includes a class and collective action waiver with language identical to the waiver contained in Alminiana's arbitration agreement. Id.

On January 30, 2020, Plaintiffs Scott Alminiana, Rebecca McPhee, Stacey Pflug, Katie Shook, and Iris Tirado, individually and on behalf of all others similarly situated, brought a collective and class action Complaint against Defendant Lowe's Home Centers LLC. Doc. 1. On April 27, 2020 Defendant filed a 12(b)(1) Motion to Dismiss and Compel Arbitration of Plaintiffs Alminiana and Pflug's claims. Doc. 34.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") establishes a policy favoring arbitration. The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3 (2018). The Supreme Court has described the FAA as "a liberal federal policy favoring arbitration." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation omitted). Furthermore, the Supreme Court has held that "courts must rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (internal quotation omitted). The court must compel arbitration if: "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc., 807 F.3d 553, 563 (4th Cir. 2015). In deciding whether the parties have an enforceable agreement to arbitrate, courts apply state law principles regulating contract formation. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

The court must also compel arbitration even if the disputed claims are exempted from arbitration or otherwise considered non-arbitrable under state law. Perry v. Thomas, 482 U.S. 483, 489-491 (1987) (holding state statute that required litigants to be provided a judicial forum for resolving wage disputes "must give way" to Congress' intent to provide for enforcement of arbitration agreements); Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 90 (4th Cir. 2005) (explaining that FAA preempts state law barring arbitration of certain claims).

On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). See also AT & T Tech., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997).

### A. Plaintiffs are Judicially Estopped from Challenging the Validity of Their Agreements to Arbitrate

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996) (internal quotation marks and citation omitted). The doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749–50 (2001) (internal citations and quotation marks omitted). The 4th Circuit has articulated three requirements for judicial estoppel:

> (1) the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the prior inconsistent position must have been accepted by the court; and (3) the party sought to be estopped must have intentionally misled the court to gain unfair advantage.

Gilliam v. Sealey, 932 F.3d 216, 233 (4th Cir. 2019) (internal citations and quotations omitted).

The first part of the test is met here. Plaintiffs filed a stipulation in a different FLSA action before this Court where they agreed to withdraw as opt-in plaintiffs because they were "subject to valid arbitration agreements" with Lowe's. See Doc. 35-4 at 5, 19; see also Danford v. Lowe's Home Centers, LLC, Doc 186. The second part is satisfied because in Danford, Magistrate Judge Keesler, "[h]aving carefully considered the motion [to dismiss Plaintiffs] and the record," entered an Order dismissing Alminiana and Pflug from that FLSA collective action. See Danford, Doc. 186. Lastly, the third part of the test is met because while Plaintiffs were willing to concede the validity of their arbitration agreements when they were part of the larger Danford collective action, they refuse to do so now, knowing that their arbitration agreements could doom their claims—and their state law class claims—in this lawsuit. Plaintiffs tacitly admit as much, emphasizing that the circumstances have changed because they are "named plaintiffs . . . seeking to represent a class of similarly situated individuals" and protesting that compelling Alminiana to arbitrate "will disqualify him from maintaining this action as a Rule 23 class action with respect to his Oregon state law claims." Doc. 36, at 20; see also id. at 18 ("It is not difficult to grasp the common sense concept that a litigant may find it beneficial to arbitrate his or her claims in one matter, while choosing to oppose arbitration in another."). Because all three parts of the test for judicial estoppel are satisfied, Plaintiffs cannot challenge the validity of their agreements to arbitrate.

**B. Plaintiffs Assented to Their Arbitration Agreements by Electronically Accepting Their Offer Letters**

"To establish that evidence is authentic, a proponent need only present 'evidence sufficient to support a finding that the matter in question is what the proponent claims.'" United States v. Vidacak, 553 F.3d 344, 349 (4th Cir. 2009) (quoting Fed. R. Evid. 901(a)). To

sufficiently authenticate electronic assent to an arbitration agreement, courts require a declaration from a person with knowledge thoroughly explaining the protocol associated with the execution of electronic employment documents or security procedures designed to ensure that any electronic assent was, in fact, attributable to the employee. In <u>Espejo v. S. California Permanente Med. Grp.</u>, 246 Cal. App. 4th 1047, 1062 (2016), the court found that defendant had sufficiently authenticated an electronic signature when it "detailed [the defendant's] security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement ...."

Defendant has sufficiently authenticated Plaintiffs' electronic acceptances of their offer letters, including the arbitration agreements therein. Since at least March 2018, it has been a condition of employment for new Lowe's hourly hires and existing Lowe's employees accepting new hourly positions to "agree to arbitrate any claims against Lowe's arising out of their employment." Doc. 39-1, at 3; Doc. 35-2, at 7. After an hourly applicant accesses an online job portal and completes an application requiring the applicant to provide his or her email address and other personal information, Lowe's sends a notification of an electronic offer letter—including an arbitration agreement—to the email provided during the application process. Doc. 39-1, at 3-4; Doc. 35-2, at 13, 18. To accept the employment offer, the applicant must log in with unique credentials and indicate whether he or she accepts the terms of the offer after reading a text box stating that the applicant has read the offer's terms and conditions and that an electronic signature is the legal equivalent of a handwritten signature. Doc. 39-1, at 4-5. Upon acceptance, a decision form with the applicant's name and email is generated. <u>Id.</u> at 5. An applicant's name

6

Case 5:20-cv-00010-KDB-DSC   Document 41   Filed 06/09/20   Page 6 of 8

and email address cannot be affixed to the form unless the applicant's login information is used to complete it. Id.

Plaintiffs' decision forms establish that they were submitted through Lowe's standard application process for hourly employees. The forms include Plaintiffs' names and email addresses, which could only have been added through use of their unique login credentials. Doc. 35-2, at 13, 18; Doc. 39-1, at 5. Further supporting the fact that Plaintiffs filled out the forms, Alminiana's decision form indicates that he responded to the offer at 3:58 P.M. on January 15, 2019, consistent with Lowe's job portal logs indicating that a notification of his offer letter was sent to his email address at 3:52 P.M. Doc. 35-2, at 13; Doc. 39-1, at 4, 10. Similarly, Pflug's offer letter shows that she submitted her decision form at 10:04 A.M. on May 5, 2018, and an email notifying her of her offer letter was sent at 9:15 A.M. that same day. Doc. 35-2, at 18; Doc. 39-1, at 4, 8.

Having established that Plaintiffs accessed and submitted their decision forms, there can be no doubt that those decision forms evince acceptance of the offer letters' terms. In response to the prompt "to accept or decline the offer of employment" with Lowe's, Alminiana and Pflug each "accept[ed] the terms of the offer." Doc. 35-2, at 13, 18. Their responses further affirm that they "read the terms and conditions set forth in the Offer Letter[s] e-mailed to [them]" and that it was their "intent…to accept these terms and conditions." Id. Finally, Plaintiffs' responses acknowledge that their electronic acceptances were "the legal equivalent of having placed [their] handwritten signature[s] on the Offer Letter[s]." Id. Plaintiffs' decision forms are therefore unequivocal in their acceptance of the offer letters' terms.

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion to Dismiss for Lack of Jurisdiction and Compel Arbitration" (Doc. 34) be **GRANTED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Kenneth D. Bell.

**SO ORDERED**.

Signed: June 9, 2020

_____
David S. Cayer
United States Magistrate Judge